IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM S. PALMER, JR., | ) | CASE NO. 1:19-cv-00102 |
| | ) | |
| Petitioner, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN LYNEAL WAINWRIGHT, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner William S. Palmer, Jr. ("Palmer" or "Petitioner") brings this habeas corpus action pursuant to 28 U.S.C. § 2254, raising nineteen grounds for relief. Doc. 1 ("Petition"). His Petition is deemed filed on January 4, 2019, the date he placed it in the prison mailing system.[1] Doc. 1, p. 15 (hereinafter referred to as "Petition"). Palmer's Petition relates to his convictions and sentence rendered in Richland County Common Pleas Court Case No. 2016 CR 0556. Doc. 1.

Following a jury trial in January 2017, Palmer was convicted of one count of felonious assault (Count 1), two counts of kidnapping (Counts 2 & 3), and one count of theft from an elderly victim (Count 4). Doc. 6-1, pp. 15, 92. Counts 1 through 3 stemmed from an incident that occurred on or about August 6, 2016, involving Palmer's girlfriend and Count 4 stemmed from an uncompleted roofing job. Doc. 6-1, p. 92. The trial court imposed an aggregate prison sentence of 19 years. Doc. 6-1, p. 16. The trial court also imposed 5 years mandatory post-release control and ordered restitution. Doc. 6-1, pp. 15-16.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). Palmer's Petition was docketed in this Court on January 14, 2019. Doc. 1.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  Respondent filed a Return of Writ (Doc. 6) and Palmer filed Traverse (Doc. 10).

For the reasons explained herein, the undersigned recommends that the Court **DISMISS and/or DENY** Palmer's Petition (Doc. 1).

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  The Fifth District Court of Appeals summarized the facts underlying Palmer's conviction and sentence as follows:

### Felonious Assault and Kidnapping

{¶ 6} In June of 2016, D. L. and Appellant began a relationship. (T. at 256). During their relationship, D.L. lived with Appellant at 302 Lenox. (T. at 262). Near the end of July, Appellant cut her ear with a pocket knife to, in his mind, make sure she was being honest with him. (T. at 258). The cut to her ear left a scar. (T. at 259). Through her brief relationship with Appellant, D.L. was not allowed to use a phone or go anywhere without his permission. (T. at 274–275).

{¶ 7} On the 6th of August, D.L. went out to eat with her parents and son for his birthday. (T. at 260). When she got back home, Appellant became angry about a Facebook message he had seen on her phone. *Id.* Appellant responded to this by gagging D.L., tying her up, and hitting her with a billy club, flashlight, his fist, and a mirror. (T. at 260). Appellant hit her with the flashlight somewhere between 20 to 30 times. (T. at 266).

{¶ 8} The club was used to strike her legs repeatedly. (T. at 266). The club had "Billy's Club" written on it. (T. at 453). Appellant tied D.L.'s hands with the cinch from a robe and her feet with a leather belt. (T. at 262–263). She was hog-tied with her hands and ankles bound together behind her back with her laying on her stomach. (T. at 262). He also held a knife to her neck and demanded she tell him the truth, which he thought she was withholding.. Appellant regularly carried this

knife with him. (T. at 265). Appellant kept D.L. tied up on a couch in the house for six hours. (T. at 263–264). During this time, he threatened to kill her, threats that she believed he would carry out. (T. at 277).

{¶ 9} Eventually, Appellant untied D.L., but she did not have the opportunity to leave until the next day. (T. at 267). Appellant allowed her to leave with a friend of hers in order to get cigarettes and money for him, but instead she got dropped off in Shelby so she could get money from her parents and a hotel room. (T. at 268). After three days, she carne back to Mansfield to press charges. (T. at 269). D.L. did not immediately go to the police because she just wanted to be away from him. (T. at 268). While D.L. was hiding from Appellant, Appellant called a family friend of D.L.'s and threatened him in an attempt to find her. (T. at 585). D.L. went to a friend's house on Seventh Avenue, but Appellant found her there; however, but she would not let him into the house. (T. at 268).

{¶ 10} On the 9th of August, 2016, D.L. contacted police and spoke with Officer Kiner. (T. at 273). The same day, D.L. went to Mansfield Ohio Health to be treated for her injuries. (T. at 273, 329). She was found to have a bruise on her right thigh, bruises to both eyes and both ears, and a scrape on her left ear. (T. at 333).

{¶ 11} Later that day, Appellant asked a family friend, William Spognardi, to take him to a place on Seventh Avenue where he thought he might locate D.L. (T. at 349–350). Spognardi dropped Appellant off and did not hear from him again until late afternoon. (T. at 350). Appellant then asked him to come pick up him to take him back to his house. *Id.* When Mr. Spognardi found him, Appellant was sprawled out on the front porch of a house and needed help getting into the car. *Id.* Appellant wanted to go to a different place to look for D.L. but Mr. Spognardi was only willing to take him back home. *Id.*

{¶ 12} On the way, they noticed a SWAT team at Appellant's home. They stopped at a McDonalds and Appellant asked Mr. Spognardi to take him to another house, but Mr. Spognardi asked why the police were there. (T. at 351). Appellant then told him that it was because he hurt D.L. and that was also why he was looking for her. (T. at 351, 364). Mr. Spognardi then started driving Appellant back to the house when the police surrounded them and Appellant was arrested. (T. at 351). When Appellant got out of the car, he left his crack pipe and phone on the seat, which were recovered by police. (T. at 352). A box cutter was also found in his possession. (T. at 373).

{¶ 13} When Appellant was questioned about D.L.'s injuries he insisted he was not there when she was injured, and that she was always running around and doing things. (T. at 451). But then he said that she never leaves his side and he cannot get anything done because of it. *Id.* He told police that D.L.'s injuries happened before she went out to lunch with her parents on the 6th, but her parents said that she did not have any black eyes when they met her. *Id.*

{¶ 14} After a search of Appellant's home, a couch cushion was recovered which appeared to have a bloodstain on it and a flashlight. (T. at 388–389). Tests of the box cutter found on Appellant when he was arrested and a mirror turned up the presence of blood. (T. at 418). There was a 50/50 DNA mixture on the knife blade and hinge area between a male and a female. D.L. could not be excluded from the mixture. (T. at 428). Tests of the blood found on the mirror found that it was a match for D.L.

*Theft*

{¶ 15} In June of 2016, Kelly Chapman and Gilbert Sellers hired Appellant to fix a roof on a property he rented in Butler. (T. at 488–492). Appellant went to the bank with Mr. Sellers and Appellant was given $4,000 cash up front. (T. at 516). The first thing Appellant was supposed to do was pay for a dumpster the following weak, but it did not appear, and neither did Appellant. (T. at 493–494). Appellant told Mr. Chapman and Mr. Sellers that his sisters had died in a car accident, causing him to be out of state. (T. at 494–495). More time passed until August when Appellant still had not started any of the work, so Mr. Chapman and Mr. Sellers filed a police report. (T. at 495–496). Police contacted Appellant, and he said he would begin work by the 5th of August. (T. at 549). No work was ever performed on the property by Appellant. (T. at 498–499).

*State v. Palmer*, 2018 WL 1611415, * 1-3 (Ohio App. Ct. March 30, 2018); Doc. 6-1, pp. 92-95.

## II. Procedural Background

### A.  State court conviction

On September 15, 2016, the Richland County Grand Jury indicted Palmer on four counts:

(1) Count One – felonious assault in violation of O.R.C. § 2903.11(A)(1), a second degree

felony; (2) Count Two – kidnapping in violation of O.R.C. § 2905.01(B)(2), a first degree

felony; (3) Count Three – kidnapping in violation O.R.C. § 2905.01(A)(3), a first degree felony;

and (4) Count Four – theft from a person in a protected class in violation of O.R.C. §

2913.02(A)(3), a fourth degree felony.  Doc. 6-1, pp. 4-5.

On September 27, 2016, the trial court appointed counsel for Palmer and Palmer pleaded

not guilty.  Doc. 6-1, p. 6.  Palmer's jury trial was originally scheduled for October 27, 2016.

Doc. 6-1, p. 7.

Upon Palmer's request, the trial was continued to December 15, 2016, to provide additional time for Palmer's counsel to conduct discovery and obtain an appropriation of funds for an investigator.  Doc. 6-1, pp. 7-8.  On November 17, 2016, the trial court granted Palmer's request for funds to hire an investigator.  Doc. 6-1, p. 8.  Upon a second request by Palmer to continue the trial date, the December 15, 2016, trial was continued to January 12, 2017, to allow more time for defendant to hire an appropriate investigator and to allow the investigator time to interview prospective witnesses.  Doc. 6, p. 8.  As an additional reason for the request, defendant indicated that the State had not yet provided a previously requested bill of information.  Doc. 6-1, p. 8.  On January 5, 2017, Palmer again requested a continuance of the trial date, asserting the that State had not yet provided responses to defendant's discovery requests.  Doc. 6-1, pp. 7-10.

On January 6, 2017, Palmer's counsel, Attorney Thompson, filed a motion to withdraw as counsel, arguing that "Defendant has expressed a lack of trust in his current counsel thereby irreparably breaking the attorney-client relationship."  Doc. 6-1, pp. 11-12.

On January 10, 2017, the trial court heard oral argument on the motion to continue the January 12, 2017, trial and motion to withdraw as counsel.  Doc. 6-1, p. 13.  On January 12, 2017, the trial court overruled both motions, noting that defendant had received the additional discovery on January 6, 2017, and the court had spoken with Palmer and his counsel to learn more information regarding Palmer's complaints.  Doc. 6-1, pp. 13-14.  The motion to withdraw as counsel was overruled "with the consent of counsel and defendant."  Doc. 6-1, p. 14.

Following the jury trial in January 2017, Palmer was convicted of all counts.  Doc. 6-1, pp. 15, 92.  The kidnapping counts (Counts 2 and 3) merged for purposes of sentencing and the trial court sentenced Palmer to 8 years on Count 1, 11 years on Count 2, and 12 months on Count 4.  Doc. 6-1, p. 16.  The sentences imposed for Counts 1 and 2 were ordered to be served

5

consecutively to each other with the sentence for Count 4 to run concurrently with the other counts for a total prison term of 19 years.  Doc. 6-1, p. 16.  The trial court also imposed 5 years mandatory post-release control and ordered restitution. Doc. 6-1, pp. 15-16.

**B.  Direct appeal**

On February 17, 2017, Palmer, through counsel, filed a notice of appeal in the Fifth District Court of Appeals.  Doc. 6-1, p. 18. On August 31, 2017, Palmer's appellate brief (Doc. 9-1, pp. 19-56), was filed wherein the following assignments of error were raised:

1. The trial court violated appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim admitted she had fabricated her claims against appellant.

2. The trial court violated appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim previously harmed herself and blamed it on someone else.

3. Appellant's right to due process and the rules of evidence were violated when the prosecution improperly used the victim's prior statement to the police on direct examination to bolster her testimony.

4. Appellant's right to the effective assistance of counsel was violated when counsel failed to object to the prosecution's improper use [of] the victim's prior statement.

5. Appellant's right to a fair trial was violated when the victim told the jury that appellant had already beaten thirty-one counts of kidnapping.

6. The trial court erred by permitting the State to utilize a deposition in the place of a missing witness.

7. Appellant's rights to due process and a fair trial were violated when the trial court denied a continuance of trial to provide appellant with time to locate witnesses.

8. Appellant's right to counsel was violated when the trial court denied defense counsel's motion to withdraw.

9. Appellant's rights to due process were violated when he suffered convictions for felonious assault and kidnapping that were not supported by sufficient evidence.

10. Appellant's convictions for assault and kidnapping were not supported by the weight of the evidence.

11. Appellant's rights to due process were violated when he suffered a conviction for theft that was not supported by sufficient evidence.

12. Appellant's conviction for theft was not supported by the weight of the evidence.

13. Appellant was deprived of his right to due process and a fair trial by the cumulative effect of the errors in this case.

Doc. 6-1, p. 21.  The State filed its brief on October 10, 2017.  Doc. 6-1, pp. 57-83.  Palmer filed a reply brief on October 23, 2017.  Doc. 6-1, pp. 84-90.  On March 30, 2018, the Fifth District Court of Appeals affirmed the trial court's judgment.  Doc. 6-1, pp. 91-115.

On May 14, 2018, Palmer, acting pro se, filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio.  Doc. 6-1, pp. 116-117, 118-161.  In his memorandum in support of jurisdiction, Palmer raised the following propositions of law:

1. The trial court violated Appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim admitted she had fabricated her claims against Appellant.

2. The trial court violated Appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim previously harmed herself and blamed it on some[one] else.

3. Appellant's right to due process and the rules of evidence were violated when the prosecution improperly used the victim's prior statement to the police on direct examination to bolster her testimony.

4. Appellant's rights to effective assistance of counsel was violated when counsel failed to object to the prosecution's improper use of victim's prior statement.

5. Appellant's rights to a fair trial was violated when the victim told the jury that Appellant had already beaten thirty-one counts of kidnapping.

6.     Appellant's rights to due process and a fair trial were violated when the
       trial court denied a continuance of trial to provide Appellant with time to
       locate witnesses.

7.     Appellant's right to counsel was violated when the trial court denied
       defense counsel's motion to withdraw.

8.     Appellant's rights to due process were violated when he suffered
       convictions for Felonious Assault and kidnapping that were not supported
       by sufficient evidence.

9.     Appellant's convictions for Assault and kidnapping that were not
       supported by the weight of the sufficient evidence.

Doc. 16-1, p. 119.  On June 4, 2018, the State of Ohio filed a memorandum in opposition to

jurisdiction.  Doc. 6-1, pp. 162-180.  On July 18, 2018, the Supreme Court of Ohio declined to

accept jurisdiction of Palmer's appeal.  Doc. 6-1, p. 181.

### C.  Motion for arrest of judgment

While his direct appeal was pending, on August 11, 2017, Palmer, acting pro se, filed a

motion for arrest of judgment with the trial court.  Doc. 6-1, pp. 182-186.  In his motion, Palmer

argued that the trial court was without jurisdiction over his case because no criminal complaint

had been filed against him.  Doc. 6-1, pp. 182-186.  On August 21, 2017, the State of Ohio filed

a memorandum in response to Palmer's motion to arrest judgment.  Doc. 6-1, pp. 187-191.  On

September 13, 2017, Palmer filed an objection to the State's response.  Doc. 6-1, pp. 192-193.

On August 31, 2017, the trial court overruled Palmer's motion for arrest of judgment, explaining

that the court's jurisdiction was invoked when the grand jury indicted Palmer.  Doc. 6-1, pp. 194-

196.

### D.  Application to reopen appeal pursuant to Ohio App. R. 26(B)

On June 28, 2018, Palmer, acting pro se, filed an application to reopen his appeal

pursuant to Ohio App. R. 26(B).  Doc. 6-1, pp. 197-220.  Palmer argued that during his direct

appeal his appellate counsel was ineffective for failing to raise the following assignments of error:

1. Appellate counsel failed to raise trial Counsel's ineffectiveness when he failed to raise Appellate's [sic] rights to a speedy trial in a timely manner, violating his rights to due process and a fair trial during the preliminary hearing.

2. Appellant [sic] Counsel failed to raise prosecutorial misconduct when the state failed to disclose specific dates critical to the accused's [sic] defense, violating appellant's rights to due process and a fair trial.

3. Appellate counsel failed to raise trial counsel's ineffectiveness when he failed to present evidence of specific dates in order to modify his potential notice of alibi.

4. Appellate counsel was ineffective when he failed to raise trial counsel's failure to raise Prosecutorial misconduct to the States [sic] introduction of non-expert testimony and the excessive showing of highly inflammatory and prejudicial photographs, violating Appellant's right's [sic] to due process and a fair trial.

5. Appellant [sic] Counsel was ineffective when he failed to raise trial counsel's failure to properly cross-examination [sic] state's witnesses [sic] William Spognardi.

6. Appellant [sic] counsel was ineffective when he failed to raise trial counsel's ineffectiveness for failing to move the Court for an In Camera Inspection due to the totality of inconsistent statements by the victim and witnesses violations Appellants [sic] Right to Due Process and a Fair Trial.

7. Appellate counsel was ineffective when he failed to raise trial counsel's ineffectiveness for failing to move for mistrial or acquittal on grounds of perjury and the totality of false testimony.

8. Appellate counsel was ineffective when he failed to raise trial counsel's failure to object to state's motion in limine, violating appellants [sic] rights to due process and a fair trial.

9. Appellate counsel was ineffective when he failed to raise trial counsel's ineffectiveness for not properly preparing and investigating and obtaining facebook evidence that would exonerate appellant, violating his rights to due process and a fair trial.

10.     Appellant [sic] counsel was ineffective when he failed to raise trial counsel's ineffectiveness when he failed to object to the prosecutor's misconduct during the state's direct examination of state's witness [D.L.], violating appellate's [sic] rights to due process and a fair trial.

Doc. 6-1, pp. 199-206.  The State filed a memorandum in opposition on June 21, 2018.  Doc. 6-1, pp. 221-227.  On September 17, 2018, the Fifth District Court of Appeals denied Palmer's application, (Doc. 6-1, pp. 228-231), finding "no genuine issue exists as to whether Appellant was denied effective assistance of counsel on appeal." (Doc. 6-1, p. 231).

On October 12, 2018, Palmer, acting pro se, filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio.  Doc. 6-1, pp. 232-233, 234-252.  In his memorandum in support of jurisdiction, Palmer raised the following propositions of law:

1.     Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to raise Appellant's rights to a speedy trial violating his rights to due process and a fair trial.  Ohio Const. Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Const.

2.     Appellate Counsel erred when he failed to raise the issue of prosecutorial misconduct when the State failed to disclose dates critical to the accused violating his rights to due process and a fair trial.  Ohio Const. Art. I Section 10 & 16; the Fifth and Fourteenth Amendments to the United States Constitution.

3.     Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to present evidence of specific dates to modify his potential notice of alibi violating his rights to due process and a fair trial.  Ohio Const. Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the United States Constitution.

4.     Appellate Counsel erred when he failed to raise the issue of prosecutorial misconduct when the State introduced non-expert testimony and excessive showing of highly inflammatory prejudicial photographs violating his rights to due process and a fair trial.  Ohio Const. Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the Constitution.

5.     Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to properly cross-examine State's witness William Spognardi violating his rights to due process and a fair trial.  Ohio Constitution Art. I,

Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

6.      Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to move for an In Camera Inspection of the totality of witness's and victim's inconsistent statements violating his rights to due process and a fair trial. Ohio Constitution Art I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

7.      Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to move for a mistrial or acquittal on grounds of perjury and the totality of false testimony violating his rights to due process and a fair trial. Ohio Constitution Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

8.      Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to object to State's Motion in Limine violating his rights to due process and a fair trial. Ohio Constitution Ar. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

9.      Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to properly prepare, investigate and obtaining [sic] facebook evidence that would exonerate appellant violating his rights to due process and a fair trial. Ohio Constitution Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

10.      Appellate Counsel erred when he failed to raise the issue of trial counsel's failure to object to the prosecutor's misconduct during the State's direct examination of State's witness [D.L.] violating his rights to due process and a fair trial. Ohio Constitution Art. I, Section 10 & 16; the Fifth and Fourteenth Amendments to the U.S. Constitution.

Doc. 6-1, pp. 235-236. The State of Ohio filed a memorandum in opposition to jurisdiction.

Doc. 6-1, pp. 253-268. On December 12, 2018, the Supreme Court of Ohio declined to accept

jurisdiction of Palmer's appeal. Doc. 6-1, p. 269.

### E.  Federal habeas corpus petition

Palmer raises nineteen grounds for relief in his Petition, (Doc. 1-6, pp. 1-8), which are set

forth below in the law and analysis section.

## III. Law & Analysis

### A.      Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable." *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6 th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)).  "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record." *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.**     **Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still

available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[2] *Id.*  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

---

[2] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### C.    Grounds One and Two

**GROUND ONE:** The trial court violated Appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim admitted she had fabricated her claims against Appellant pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** Witness would have testified that him and his girlfriend lived with appellant and the victim prior to the victims [sic] allegations. He would have testified to the character of the witness and how appellant treated her contrary to the state's prosecution. He would have also testified to an incident on January 8th, 2017, when the victim told Mr. Stamper that she had made false allegations against appellant revealing the reason why the victim fabricated her story and why she couldn't come forward. Appellant had lost contact with Mr. Stamper and his girlfriend after he was incarcerated. The only contact appellant had with Stamper was when Stamper was admitted to the county jail on January 11th, 2017 during which time Stamper was out of commission due to withdraw symptoms. The next day during the defense portion of trial, the defense officially offered Stamper's testimony. Prior to this counsel for the defense had spoken to Stamper by telephone at the jail. Stamper told defense counsel that he was with the victim on January 8th, 2017, and she had told him she had lied but it was to[o] late to change the trajectory without being charged for perjury. The prosecutor objected, claiming it was discoverable before trial, but was not actually discovered until after trial began. Defense counsel had explained to the court that Stamper that stamper [sic] had just been placed in jail with appellant on January 11th, 2017 and the appellant was not aware of Stamper's whereabouts or his conversation with

the victim until he spoke with him in jail.  The prosecutor was notified of the witness as soon as the defense had discovered him.

**GROUND TWO:**  The trial court violated Appellant's rights to due process and a fair trial by excluding a witness who could testify that the victim previously harmed herself and blamed it on someone else pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  The court would not allow the defense to use Mr. Heatherington as a witness. The court ruled that it was last minute and the victim had not been confronted with the claims. This witness along with others would have established an unfortunate pattern by the victim.  A patter [sic] the jury was not afforded hearing and crucial to the defense.

Doc. 1-6, pp. 2-3.

In these two grounds for relief, Palmer challenges the trial court's evidentiary rulings regarding two witnesses disclosed during trial.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Generally, therefore, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012). Habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings.  *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.)  Nonetheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Bugh v. Mitchell*, 329

F.3d 496, 512 (6th Cir. 2003) ("When an evidentiary ruling is so egregious that it results in a

denial of fundamental fairness, it may violate due process and thus warrant habeas relief.").  Yet,

"courts 'have defined the category of infractions that violate 'fundamental fairness' very

narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)

(quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To the extent that Palmer seeks federal habeas relief based on an alleged violation of a

state evidentiary rule, he fails to state a claim upon which federal habeas relief may be granted.

With respect to his claim that the trial court's evidentiary ruling denied him his right to

due process and fair trial, the state court of appeals considered Petitioner's claim and found it

unavailing.  In doing so, the state court of appeals stated:

> {¶ 31} In his First and Second Assignments of Error, Appellant claims the trial
> court erred in excluding witnesses Mark Stamper and Michael Heatherington
> from testifying at trial. We disagree.

> {¶ 32} Here, the trial in this matter commenced on January 12, 2017. Appellant
> did not disclose that he wanted to offer the testimony of Mark Stamper and
> Michael Heatherington until January 17, 2017, after two days of testimony had
> been completed. According to Appellant, Mr. Stamper would testify that
> Appellant (1) treated the victim well, and (2) the victim's testimony was
> fabricated. (T. at 708, 742–743). Michael Heatherington was to testify that he had
> seen the victim harm herself and blame someone else in the past. (T. at 742).

> {¶ 33} The trial court denied the request to call these witnesses finding that their
> testimony was not relevant, that the victim had not been confronted with their
> testimony, and that their disclosure was untimely and last minute. (T. at 747).

> ¶ 34} Although a criminal defendant has the right to present witness testimony on
> his behalf, a trial court may "exclude such evidence when the orderly
> administration of justice is threatened by the accused's failure to promptly
> disclose witnesses." *State v. Moon,* 74 Ohio App.3d 162, 169 (9th Dist.1991).

{¶ 35} The rules of discovery, and more specifically Crim.R. 16, imbue trial courts with the discretion to exclude testimony that is not disclosed in a timely manner in order to prevent surprise and ensure a fair trial. *State v. Barrios,* 9th Dist. No. 06CA009065, 2007–Ohio–7025, ¶18. "Exclusion is a permissible sanction 'as long as it would not completely deny the defendant his constitutional right to present a defense.' " *Id.,* quoting *State v. Sinkfield,* 2d Dist. No. 18663, 2001 WL 1517314 (Nov. 30, 2001). A trial court's decision to exclude testimony is a discretionary one, therefore we review a court's decision to exclude evidence under an abuse of discretion standard of review. *Barrios* at ¶18. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 36} Given our review of the record, we cannot conclude that the trial court abused its discretion by excluding the testimony of these two witnesses. Appellant has not shown that the trial court abused its discretion. The court excluded these witnesses in order to avoid unfair surprise and to ensure a fair trial. *See Barrios,* 2007–Ohio–7025, at ¶18. Additionally, the court's ruling did not completely deny Appellant his constitutional right to present a defense. *See Id.* Appellant was still able to attack the credibility of the victim through cross-examination.

{¶ 37} Appellant's First and Second Assignments of Error are denied.

*Palmer*, 2018 WL 1611415 * 3-4.

Palmer contends that the witnesses that the trial court excluded were critical to his defense. Doc. 10, p. 2. However, he has failed to show that the state court's evidentiary ruling is so egregious to fall within the narrow "category of infractions that violate 'fundamental fairness[.]'" *Dowling*, 493 U.S. at 352. While a defendant's right "to present witnesses in his own defense" has been recognized as fundamental, "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). As further explained by the Supreme Court,

The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). Relevant evidence may, for example, be excluded on account of a

19

defendant's failure to comply with procedural requirements. See *Michigan v. Lucas,* 500 U.S. 145, 151, 111 S.Ct. 1743, 1747, 114 L.Ed.2d 205 (1991).

*Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (alterations in original) (internal quotations omitted).  As the state court of appeals explained, the trial court did not allow presentation of the two witnesses "in order to avoid unfair surprise and to ensure a fair trial."  *Palmer*, 2018 WL 1611415 * 4.  Furthermore, the state court of appeals concluded that "the court's ruling did not completely deny Appellant his constitutional right to present a defense . . . [and] Appellant was still able to attack the credibility of the victim through cross-examination."  *Palmer*, 2018 WL 1611415 * 4.   Palmer has not explained how or demonstrated that the state court of appeals' determination was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, the undersigned recommends that the Court **DISMISS and/or DENY** Grounds One and Two as not cognizable on federal habeas review and/or without merit.

### D.   Ground Three

**GROUND THREE:**  Appellant's rights to due process and the rules of evidence were violated when the prosecution improperly used the victim's prior statement to the police on direct examination to bolster her testimony pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  During the victim's direct examination the prosecutor showed her a copy of her written statement to police.  The prosecutor then proceeded to question her in detail about her prior statement, reading aloud the questions verbatim from the officers eliciting a response to publish to the jury.

Doc. 1-6, p. 2.

Respondent argues that, assuming arguendo that Ground Three is cognizable, since there was no contemporaneous objection at trial to the prosecution's use the victim's prior statement to the police, the Court should dismiss Ground Three as procedurally defaulted. Doc. 6, pp. 15-19.

Alternatively, Respondent argues that Ground Three is not cognizable on federal habeas review and/or without merit.  Doc. 6, pp. 26-31.

When reviewing the claim that Palmer now raises in Ground Three, the state appellate court explained, "Initially, we note Appellant failed to object to the use of the written statement at trial.  We therefore review the admission of the statements for plain error."  *Palmer*, 2018 WL 1611415, * 5.  Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected.  *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998).  In "exceptional circumstances," however, Ohio courts may examine a claim that is otherwise waived due to the violation of a procedural rule – such as the contemporaneous objection rule – for "plain error," when "but for the error, the outcome of the trial clearly would have been otherwise."  *State v. Long*, 53 Ohio St. 2d 91, 96, 97 (Ohio 1978); *see also* Ohio R. Crim. P. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").  Failure to adhere to the "firmly-established" contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted.  *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).  And "the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules[.]"  *Id.*; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) ("Although the court did evaluate the claim under plain error, 'the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue....'") (quoting *Keith*, 455 F.3d at 673); *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020) ("[A] state court's decision to employ plain error review to otherwise abandoned arguments

does not excuse a petitioner's default."  (citing *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)).

Since Palmer failed to comply with Ohio's contemporaneous objection state procedural rule; the state court enforced the procedural rule, and Ohio's contemporaneous objection rule is an independent and adequate state ground upon which review of a constitutional claim can be foreclosed, in order to overcome the procedural default of the claim raised in Ground Three, Palmer must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750; *Maupin*, 785 F.2d at 138.

While Palmer asserts an ineffective assistance of trial counsel claim for failure to object to the prosecutor's use of the victim's prior statement in Ground Four (Doc. 10, pp. 5-6) and, while ineffective assistance of counsel may serve as cause to excuse a procedural default, *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), Palmer fails to argue that said claim constitutes cause to excuse his procedural default of Ground Three.  Also, as explained below, Palmer's ineffective assistance of trial counsel claim based on a failure to object to the use of the victim's prior statement during her testimony is without merit.  Furthermore, Palmer has not demonstrated actual prejudice resulting from the alleged constitutional error or that a fundamental miscarriage of justice will occur if Ground Three is not heard on the merits.  In fact, Palmer does not respond to Respondent's procedural default argument.  He argues only that the prosecutor's use of the prior statement during examination of the victim was improper under Ohio evidentiary rules.  Doc. 10, pp. 3-5.  However, when reviewing Palmer's challenge as to the use of the victim's prior statement, the state court of appeals explained, in part:

> {¶ 46} Upon review, we find admission of the statements does not rise to the level of plain error because the outcome of the trial would not have been different

22

absent its admission. Plain error or defect under Crim.R. 52(B) does not occur unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Here, we find that this testimony was mainly cumulative as the victim had already testified as to what happened. Further, Appellant cross-examined the victim with regard to the written statement. (T. at 288–289).

{¶ 47} Also, the victim's credibility was an issue in this case and had been challenged by Appellant during opening statements. (T. at 224).

{¶ 48} Evid.R. 801(D)(1)(b) provides that a statement is not hearsay, and is therefore admissible if it is a prior statement by a witness that is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]"

{¶ 49} It has been consistently held that attacking a victim's credibility during opening statements is grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). *State v. Hunt,* 10th Dist. No. 12AP–103, 2013–Ohio–5326, ¶ 39 ("Defense counsel's opening statement implied that Lewis had been untruthful in her statements to police. This was an allegation of recent fabrication or improper influence that allowed the state to introduce Lewis's prior consistent statements to rehabilitate her testimony."); *State v. Crawford,* 5th Dist. No. 07 CA 116, 2008–Ohio–6260, ¶ 64 ("It has previously been held that such implications [of fabrication] during opening statements are sufficient to allow the State's use of Evid.R. 801(D)(1)(b)"); *State v. Abdussatar,* 8th Dist. No. 86406, 2006–Ohio–803, ¶ 15 ("Attacking a victim's credibility during opening statement has been found to constitute sufficient grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). Therefore, because defense counsel contended the victim fabricated the rape, and because the victim testified and was subject to cross-examination, the trial court did not err by allowing the letter to be admitted into evidence.")

{¶ 50} The Twelfth District explained when a court may admit a prior consistent statement:

> For the rule to apply, the declarant must be subject to cross-examination and the statement must be offered to rebut a charge that the declarant lied or was improperly influenced in his testimony. [*State v.*] *Williams,* [12th Dist. No. CA2007–04–087,] 2008–Ohio–3729, ¶ 12. To be admissible, prior consistent statements must have been made before the existence of any motive or influence to falsify testimony. *Id.* In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation. [*State v.*] *Grays,* [12th Dist. No. CA2001–02–007, 2001–Ohio–8679] at 12.

23

{¶ 51} *State v. Smith*, 12th Dist. No. CA2009–02–038, 2010–Ohio–1721, ¶ 103.

{¶ 52} Based on the foregoing, we find no plain error was committed by the trial court in allowing said questioning and testimony.

*Palmer*, 2018 WL 1611415, * 5-6.

Considering the foregoing, the undersigned finds Respondent's unchallenged procedural default argument to be well-taken.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Three as procedurally defaulted.[3]

### E.     Ground Four

**GROUND FOUR:**  Appellant's rights to effective assistance of counsel was violated when counsel failed to object to the prosecution's improper use of the victim's prior statements pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  See ground No. 3's supporting fact.

Doc. 1-6, p. 2.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.  In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*   A petitioner must show that counsel's representation fell below an objective

---

[3] In light of Palmer's procedural default of Ground Three, it is unnecessary to consider Respondent's alternative arguments for dismissal or denial of Ground Three.

standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.

"Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too

tempting for a defendant to second-guess counsel's assistance after conviction or adverse

sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.*

689.  Thus, in order to conduct a fair assessment of counsel's performance, every effort must be

made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time."  *Id.*   In light of "the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'"  *Id.* (internal citation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the

defense."  *Id.* at 687.  "This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable."  *Id.*   "The defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.* at 694.

The court of appeals found no merit to Palmer's claim that his trial counsel was

constitutionally ineffective for failing to object to the prosecutor's use of the victim's prior

statement.  *Palmer*, 2018 WL 1611415, * 6-7.  In reaching its decision, the court explained:

> {¶ 54} In his Fourth Assignment of Error, Appellant argues he was denied the
> effective assistance of counsel. We disagree.

{¶ 55} A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶ 56} Here, Appellant argues that his trial counsel was ineffective in failing to object to the state's use of the victim's prior written statement.

{¶ 57} Competent counsel may reasonably hesitate to object to potential errors in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial. *State v. Howell*, 5th Dist. Delaware No. 15 CAA 12 0098, 2016–Ohio–7749, ¶ 39, appeal not allowed, 150 Ohio St.3d 1409, 2017–Ohio–6964, 78 N.E.3d 909. Thus counsel's failure to object may have been sound trial strategy.

{¶ 58} Further, for the reasons set forth in Assignment of Error III, Appellant has not demonstrated the result of the trial would have been different.

{¶ 59} Appellant's Fourth Assignment of Error is denied.

*Palmer*, 2018 WL 1611415, * 6-7.

Where, as in this case, a state court of appeals has reached the merits of the ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  There is no de novo review of the evidence.  In *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the

> *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).  Palmer argues that his counsel performed in an objectively unreasonable manner by failing to object and that there was a reasonable probability that the outcome would have been different had his counsel objected.  Doc. 10, pp. 5-6.  However, he has not shown that the court of appeals' determination as to the two *Strickland* prongs "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[.]" *Id.*

Considering the double layer of deference and Palmer's failure to show that the state court of appeals' decision was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, the undersigned recommends that the Court **DENY** Ground Four on the merits.

### F.    Ground Five

**GROUND FIVE:**  Appellant's rights to a fair trial were violated when the victim told the jury that Appellant had already beaten 31 counts of kidnapping pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  Considering the fact that appellant has no prior kidnappings, the statement elicited from the victim by the prosecution that the appellant had already beat 31-counts of kidnapping was highly prejudicial considering appellant had none and the jury was left to wonder even though a curative instruction was given by the court to strike.[4]  And although the court give a curative instruction to the jury the state still had a duty and obligation to correct and elicit the truth

---

[4] For ease of reference, the undersigned notes that the testimony at issue, motion to strike and curative instruction can be found at Doc. 7-3, pp. 40-41.

> once a falsehood appeared.  The fact here is that the state elicited the response,
> intentionally or not ultimately ringing a bell that couldn't be unrung.  The fact that
> the state objected to the victim's response is proof enough that he was aware that
> she had told another lie.  The jury should have been made aware why her
> statement wasn't factual and why did she tell the lie.  Without doing so the jury
> was not made aware of the victim's true credibility, denying appellant fair
> consideration by the jury.

Doc. 1-6, pp. 2-3.

As explained above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  Thus, generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  *Moreland,* 699 F.3d at 923.  And, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512.

To the extent that Palmer seeks federal habeas relief based on a violation of a state evidentiary rule, he fails to state a claim upon which federal habeas relief may be granted.

With respect to Palmer's claim that the prosecutor was under an obligation to take additional corrective action once the victim presented inadmissible testimony, (Doc. 1-6 , pp. 2-3), or that his counsel should have objected and moved for a mistrial, (Doc. 10, p. 7) Palmer did not fairly present these claims to the state court.  Rather, he only argued that the victim's unprompted testimony about prior kidnapping counts was "too prejudicial to be overcome by a curative instruction . . ." Doc. 6-1, pp. 43-44; Doc. 6-1, pp. 128-129.  Thus, to the extent Ground Five is premised on these unexhausted claims, the Court should dismiss Ground Five.

Additionally, Palmer's claim that he is entitled to federal habeas relief on the basis that his counsel did not object or move for a mistrial following the victim's unsolicited testimony regarding other alleged kidnapping counts was first raised in his Traverse.  Thus, the Court

should decline to consider that claim.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)

(an argument first presented in a petitioner's traverse rather than in his petition was not properly

before the district and it was not error for the district court to decline to address the argument);

*see also Berlanga v. Winn*, 2017 WL 4863171, * 4 (6th Cir. May 11, 2017) ("A district court

may decline . . . to address an issue raised for the first time in a traverse.") (citing *Tyler*, 416 F.3d

at 504).

Even if the Court were inclined to consider Palmer's claim that the prosecutor had a duty to

take further action to explain why the statement was not factual and/or why the victim told a lie, the

undersigned finds that claim unavailing.  Palmer suggests that the court's curative instruction did not

release the State "from its obligation and duty to correct the false testimony and elicit the truth[.]"

Doc. 10, p. 7 (relying on *Napue v. Illinois*, 360 U.S. 264 (1959)).  Palmer's reliance upon *Napue* to

obtain federal habeas relief is misplaced.  In *Napue*, the Supreme Court found a denial of the

defendant's right to due process where the prosecutor solicited false testimony from a witness that no

promises had been made by the state in exchange for his testimony against the defendant and that the

false testimony used by the state to obtain the conviction may have had an effect on the outcome of

the trial.  *Napue*, 360 U.S. 264.  In reaching its decision, the Supreme Court explained that "it is

established that a conviction obtained through use of false evidence, known to be such by

representatives of the State, must fall under the Fourteenth Amendment . . . The same result obtains

when the State, although not soliciting false evidence, allows it to uncorrected when it appears."

*Napue*, 360 U.S. at 269 (citing *inter alia Mooney v. Holohan*, 294 U.S. 103 (1935) and *Alcorta v.

Texas*, 355 U.S. 28, which cases are also relied upon by Palmer).  While the State did not directly

solicit false evidence, Palmer contends that the State failed to correct the alleged false testimony from

the victim regarding additional kidnapping counts.  Assuming arguendo that the testimony was in fact

false, the State did not fail to take corrective action.  In *Napue*, the court observed: "That the Assistant State's Attorney himself thought it important to establish before the jury that no official source had promised Hamer consideration is made clear by his redirect examination, which was the last testimony of Hamer's heard by the jury[.]"  *Napue*, 360 U.S. at 270.  As highlighted by the court, one of the questions on redirect was "Q. Have I promised you that I would recommend any reduction of sentence to anybody? A. You did not. (That answer was false and known to be so by the prosecutor.)." *Id.* at 271 (internal quotations omitted).  Unlike the prosecutor in *Napue*, the prosecutor in Palmer's case did not on further examination continue to inquire about alleged prior kidnappings.  Rather, the State immediately requested that the unsolicited and inadmissible testimony be stricken from the record and a curative instruction was provided.  Additionally, Palmer has not shown that the testimony, which was stricken, may have had an effect on the outcome of his trial.

Rather, when the state court of appeals considered Palmer's claim that his right to a fair trial was violated when the victim testified about there being prior kidnapping counts, the court concluded that the isolated comment was not so prejudicial to preclude the rendering of an impartial verdict.  More particularly, the court of appeals stated:

> {¶ 60} In his Fifth Assignment of Error, Appellant argues that he was denied a fair trial when the victim testified that Appellant had beaten thirty-one counts of kidnapping previously. We disagree.
>
> {¶ 61} The following exchange took place during the victim's testimony:
>
> Q: Were you scared of Billy finding you?
>
> A: Yes.
>
> Q: What did you think would happen if he did?
>
> A: That if he didn't beat me, I would be killed.
>
> Q: Was there a reason you didn't go to the police right away?

A: I just wanted to be away. He's already beaten 31 counts of kidnapping. I didn't want to be the next one to get—

{¶ 62} At this point, the state immediately moved to strike and requested the court to give the jury a curative instruction. The trial court struck the comment and gave a curative instruction to the jury:

Court: Whatever she said then is not testimony in this case. It is not factual and it is not going to be accepted as factual in this case.
...
You are instructed to disregard her last comment. It is not factual.

(T. at 269–270)

{¶ 63} A jury is presumed to have followed the instructions, including curative instructions, given by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634 (1995); *State v. Loza,* 71 Ohio St.3d 61, 75, 641 N.E.2d 1082, 1100 (1994); *State v. Ahmed*, 103 Ohio St.3d 27, 2004–Ohio–4190, 813 N.E.2d 637, ¶ 93. Curative instructions are presumed to be an effective way to remedy errors that occur during the trial. *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001–Ohio–4, 739 N.E.2d 749.

{¶ 64} Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017–Ohio–7861. The comments were isolated in the trial and were not so prejudicial that an impartial verdict could not be reached. Further, the statement was immediately followed by a short, authoritative instruction to the jury to disregard the statement, which was sufficient to remedy any possible error regarding the struck testimony. Further, based on the remainder of the victim's testimony, together with the other evidence, we do not find the statement was so prejudicial that an impartial verdict could not be reached.

{¶ 65} Accordingly, Appellant's Fifth Assignment of Error is overruled.

*Palmer*, 2018 WL 1611415, * 7.  Petitioner reiterates his claim that the victim's statement regarding prior kidnappings was too prejudicial to be undone by the trial court's curative instruction.  However, the state court of appeals considered this claim and found it meritless.  Under AEDPA, deference is due the state court of appeals' merits determination and Palmer does not argue or explain how the court of appeals' determination was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

For the reasons explained, the undersigned recommends that the Court **DISMISS** and/or

**DENY** Ground Five as presenting claims that are non-cognizable, unexhausted, and/or without

merit.

### G.     Ground Six

**GROUND SIX:**  Appellant's rights to due process and a fair trial were violated
when the trial court denied a continuance of trial to provide Appellant time to
locate witnesses pursuant to the Fifth, Sixth and Fourteenth Amendments to the
United States Constitution.

**Supporting Facts:**  [A]ppellant had a list of 20 witnesses that he was having
trouble locating even with funds for an investigator appropriated by the court.
The court had just authorized the money for the investigatory [sic] in late
November 2016, which left him less than two months.  When the investigator
failed to produce any witnesses appellant succeeded in finding a way to locate
some of the witnesses, but it was apparent it would take time to follow up on.
And, even though the court offered to allow appellant's investigator time to look
for witnesses while trial was pending was clearly false, given that the court
refused to allow the testimony of Stamper and Heatherington after they were
located during trial.  Fact, many of the problems with the trial could have been
avoided by granting a continuance to provide the prosecution with witnesses in a
timely fashion through the normal discovery process.

Doc. 1-6, p. 3.

The Supreme Court has stated the following regarding a trial judge's consideration of

requests for continuances:

The matter of continuance is traditionally within the discretion of the trial judge,
and it is not every denial of a request for more time that violates due process even
if the party fails to offer evidence or is compelled to defend without
counsel.  Contrariwise, a myopic insistence upon expeditiousness in the face of a
justifiable request for delay can render the right to defend with counsel an empty
formality. There are no mechanical tests for deciding when a denial of a
continuance is so arbitrary as to violate due process. The answer must be found in
the circumstances present in every case, particularly in the reasons presented to
the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589-590 (1964) (internal citations omitted). Thus, the Sixth Circuit has indicated that, "[d]enial of a continuance rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay ...." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (internal quotations omitted) (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar*, 376 U.S. at 589)). And, a petitioner "must also show that the denial of a continuance actually prejudiced his . . . defense." *Burton*, 391 F.3d at 772.

Consistent with these principles, the state court of appeals considered the claim Palmer raises in Ground Six and found that the trial judge's decision to deny the third continuance was not an abuse of discretion, i.e., it was not unreasonable, arbitrary or unconscionable. More particularly, the court explained:

> {¶ 71} In his Seventh Assignment of Error, Appellant argues the trial court erred in denying his motion for continuance. We disagree.
>
> {¶ 72} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.*; *State v. Wheat,* 5th Dist. Licking App. No. 2003–CA–00057, 2004–Ohio–2088 The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157.
>
> {¶ 73} In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test which takes into account a variety of competing considerations, including the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request for a continuance. *State v. Unger,* 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078 (1981).
>
> {¶ 74} In the instant case, Appellant was arrested on August 9, 2016 and indicted September 15, 2016. Appellant was appointed counsel on September 27, 2016,

and trial was initially scheduled for October 27, 2016. Defense counsel moved for a continuance of trial to allow him time to retain an investigator and locate witnesses. The trial was rescheduled to December 15, 2016. Counsel moved for a second trial continuance to allow him additional time to find an appropriate investigator and give him time to work. The trial was then continued to January 12, 2017. On January 5, 2017, defense counsel filed a third motion for a continuance, stating that he was still waiting on the Bill of Information and certain discovery which had been requested from the State of Ohio. A hearing was conducted on January 10, 2017, wherein the motion to continue was discussed. At said hearing, it was noted that the requested discovery had been provided to Appellant one day after his motion. Appellant argued that he needed additional time to locate necessary witnesses. (T. at 41). After additional discussions with Appellant and his counsel, the trial court denied Appellant's motion to continue the trial for a third time.

{¶ 75} Upon consideration of the *Unger* factors, we do not find the trial court abused its discretion. As set forth above, this case was continued on two prior occasions at the request of Appellant for the same reasons as stated in this motion.

{¶ 76} Based on the foregoing, we find the trial court did not err in denying Appellant's third request for a continuance of trial.

{¶ 77} Appellant's Seventh Assignment of Error is overruled.

*Palmer*, 2018 WL 1611415, * 8-9.  Palmer initially argues that the State failed to note that one of the continuances was requested to accommodate his counsel's schedule in another case.  Doc. 10, p. 8.  The transcript does reflect that one continuance was granted because Palmer's counsel had a conflict.  Doc. 7-1, p. 41.  However, that request for a continuance was also granted because counsel indicated he needed more time for investigation of the case.  Doc. 7-1, p. 41; Doc. 6-1, p. 8.  Thus, while the State may not have noted that one of the continuances was also due to a conflict that his counsel had, the record supports that the prior continuances were requested to allow more time for investigation of the case.

Also, deference is afforded to a trial judge with respect to granting or denying a continuance and, while a different judge may have granted a continuance, as the Supreme Court has explained, "the fact that something is arguable does not make it unconstitutional."  *Ungar*, 376 U.S. at 591.  Moreover, as outlined herein, upon consideration of the circumstances

34

associated with Palmer's third request for a continuance of the trial, the state court of appeals

concluded that the trial court did not abuse its discretion and Palmer has not shown that the court

of appeals' decision is contrary to or an unreasonable application of clearly established law or

resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

Upon consideration of the foregoing, the undersigned recommends that the Court **DENY**

Ground Six on the merits.

### H.    Ground Seven

**GROUND SEVEN:**  Appellant's right to counsel was violated when the trial
court denied defense counsel's motion to withdraw pursuant to the Fifth and
Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** Appellant's rights to a fair trial was jeopardized when counsel
refused his request his request [sic] to pursue and obtain the victim's texts on
Facebook's Messenger critical to his defense.  Information that would break the
established timeline the victim claims she was tied up.  This information would
provide evidence and witnesses that would exonerate appellate [sic] of all
allegations against him.

Doc. 1-6, p. 3.

Palmer's court appointed counsel, Attorney Thompson, (Doc. 6-1, p. 6), filed a motion to

withdraw as counsel on January 6, 2017 – less than one week before the jury trial that was

scheduled for January 12, 2017 (Doc. 6-1, pp. 11, 275).  On January 10, 2017, the trial court

conducted a hearing on the motion to withdraw.  Doc. 7-1.  During the hearing, at Palmer's

request, and without objection from the prosecution, the trial court met separately with Palmer

and his counsel to inquire further into Palmer's complaints regarding his counsel's

representation.  Doc. 7-1, pp. 6, 10-46.  At the conclusion of their discussion, Palmer agreed to

proceed with Attorney Thompson as his counsel.  Doc. 7-1, p. 40.  The trial court ultimately

overruled the motion to withdraw.  Doc. 7-1, p. 45.

The Sixth Amendment entitles a defendant to effective assistance of counsel.[5]  *Tolliver v. Dallman*, 57 F.3d 1070, *2 (6th Cir. June 16, 1995) (unpublished) (citing *Strickland v. Washington*, 466 U.S. 686 (1984)).  However, "[t]his right has not been extended to allow an indigent defendant the counsel of his choice."  *Tolliver*, 57 F.3d at *2 (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (continuing to recognize limitations on the right to counsel of choice, noting that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them").  Since "[a]n indigent defendant has no right to have a particular attorney represent him," in order to be entitled to substitution of counsel, a defendant must show good cause for substitution.  *Tolliver*, 57 F.3d at * 2.  State and federal courts have recognized that a trial court must make some inquiry into a defendant's complaints where there has been a request for substitution of appointed counsel.  *Id.*  Notwithstanding the need for inquiry into a defendant's complaints, "[t]he Sixth Amendment does not guarantee the defendant a 'meaningful relationship' with his attorney."  *Simmons v. Sheets*, 2011 WL 1043909, * 27 (S.D. Ohio Feb. 23, 2011), *report and recommendation adopted*, 2011 WL 1002734 (S.D. Ohio Mar. 16, 2011).  Thus, "[t]he decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the court."  *Id.* (citing *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004)).

In considering a request for substitution of counsel, a court is to consider: "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense."  *Id.* (citing *Benitez v. United States*, 521 F.3d

---

[5] In his Petition and Traverse, with respect to Ground Seven, Palmer refers to a violation of his Fifth and Fourteenth Amendment rights without articulating the legal bases of this claim.  Doc. 1-6, p. 3; Doc. 10, p. 10.  In state court, he referenced the Sixth Amendment.  Doc. 6-1, p. 49.

625, 632 (6th Cir. 2008); *United States v. Henderson*, 626 F.3d 326, 2010 WL 4670503, at *10 (6th Cir. Nov. 19, 2010)).  Further, "[c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."  *Simmons*, 2011 WL 1043909, *27; *see also United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996) (same) (citing *United States v. Iles*, 906 F.2d 1122, 1130, n. 8 (6th Cir. 1990)).  When "evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'"  *Wheat v. U.S.*, 486 U.S. 153, 159 (1988) (quoting *United States v. Cronic*, 466 U.S. 648, 657, n. 21 (1984)).

In reviewing Palmer's claim that the trial court erred by not allowing his court appointed counsel to withdraw as counsel one week prior to counsel, the court of appeals stated:

{¶ 78} In his Eighth Assignment of Error, Appellant argues the trial court erred in denying his trial counsel's request to withdraw. We disagree.

{¶ 79} A trial court's decision to grant or deny an attorney's motion to withdraw from representing a client will not be disturbed on appeal absent an abuse of discretion. *McGraw v. Convenient Food Mart* (June 18, 1999), Lake App. No. 97–L–271, unreported citing *Bennett v. Bennett* (1993), 86 Ohio App.3d 343, 347, 620 N.E.2d 1023. Courts are reluctant to approve withdrawal of counsel on the eve of trial or when the client will be left unrepresented at trial." *McGraw, supra,* quoting Guttenberg & Snyder, The Law of Professional Responsibility in Ohio (1992), 79.

{¶ 80} To discharge a court-appointed attorney, the defendant must show " 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792, 798–99 (1988) citing *People v. Robles* (1970), 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 173, 466 P.2d 710, 717.

{¶ 81} Here, Appellant has not established that such a breakdown occurred. Indeed, our review of the record indicates Appellant's counsel and the hired investigator were doing their best in locating the witnesses with the information provided to them by Appellant. (T. at 12, 15–16). During the hearing on January 10, 2017, the trial court stated that it appeared that Appellant's counsel was vigorously pursuing a defense on Appellant's behalf. (T. at 1–6).

{¶ 82} For these reasons, we do not find any abuse of discretion by the trial court. We hold appellant's argument is without merit.

{¶ 83} Appellant's Eighth Assignment of Error is overruled.

*Palmer*, 2018 WL 1611415, * 9.  In these proceedings, Palmer simply reiterates arguments presented in state courts.  However, under AEDPA, because the state court has adjudicated the claim on the merits, in order to obtain federal habeas corpus relief, Palmer must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby*, 132 S. Ct. at 27.  Palmer has failed to make such a showing with respect to the state court's determination regarding his claim that the trial court violated his constitutional rights by denying his counsel's motion to withdraw one week prior to the start of trial.  He has not shown that the state court's determination is contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, the undersigned recommends that the Court **DENY** Ground Seven on the merits.

## I.      Grounds Eight and Nine

**GROUND EIGHT:**  Appellant's rights to due process were violated when he suffered convictions for felonious assault and kidnapping and were not supported by sufficient evidence pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**[Supporting Facts:]** _ dope sickness.  She was caught in numerous lies, and inconsistencies.  At trial she was caught in a lie and admitted she had lied under oath at the preliminary hearing which in turn was part of the proceedings which appellant was indicted from.  Although there was some D.N.A. evidence presented at trial appellant's D.N.A. wasn't present or tested.  And, [a]lthough appellant was arrested days later in possession of a small box knife he claimed it was the victim's given to him to dress her bandages from an ear injury she

received prior to her allegations against appellant.  In addition no other evidence existed such as ligatures or ligature marks.  Medical reports showed no bruising, swelling, or discoloration that would be present after allegedly being hog-tied for 6 hours.

Doc. 1-6, pp. 3-4.

**GROUND NINE:**  Appellant's conviction for assault and kidnapping were not supported by the weight and sufficiency of the evidence violating his right to a fair trial and proof beyond a reasonable doubt pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  The victim was not credible and the court and the jury lost its way.  See prior grounds and support facts No. 8.

Doc. 1-6, p. 4.

In both Grounds Eight and Nine, Palmer asserts that his convictions for assault and kidnapping are not supported by sufficient evidence.  Also, in Ground Nine, Palmer argues that that those convictions not supported by the weight of the evidence.  Palmer's Traverse appears to more clearly differentiate the two grounds, with Ground Eight being a sufficiency of the evidence claim and Ground Nine being a manifest weight of the evidence claim.  Doc. 10, pp. 11-13.  The undersigned addresses both arguments below.

_Manifest weight of the evidence_

"A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding[.]" _Brown v. Moore_, 2008 WL 4239160, *2, 8-9 (S.D. Ohio 2008) (footnote 2 omitted) (citing and relying on 28 U.S.C. § 2254(a); _Pulley v. Harris_, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)).  Accordingly, the undersigned recommends that the Court **DISMISS** Palmer's manifest weight of the evidence claim in Ground Nine as not cognizable on federal habeas review.

*Sufficiency of the evidence*

Unlike a manifest weight of the evidence claim, a sufficiency of the evidence claim is cognizable on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (reaffirming that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are

subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude

that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the

Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not

unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*;

see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In rendering its decision, the state court of appeals addressed Palmer's sufficiency claim,

stating:

> {¶ 84} In his Ninth and Tenth Assignments of Error, Appellant argues that his
> convictions for felonious assault and kidnapping were against the manifest weight
> and sufficiency of the evidence. We disagree.

> {¶ 85} The legal concepts of sufficiency of the evidence and weight of the
> evidence are both quantitatively and qualitatively different. *State v. Thompkins*,
> 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the
> syllabus. The standard of review for a challenge to the sufficiency of the evidence
> is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at
> paragraph two of the syllabus, in which the Ohio Supreme Court held, "An
> appellate court's function when reviewing the sufficiency of the evidence to
> support a criminal conviction is to examine the evidence admitted at trial to
> determine whether such evidence, if believed, would convince the average mind
> of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is
> whether, after viewing the evidence in a light most favorable to the prosecution,
> any rational trier of fact could have found the essential elements of the crime
> proven beyond a reasonable doubt."

> ***

> {¶ 87} Here, Appellant argues that his convictions for felonious assault and
> kidnapping are based on the testimony of the victim who was not credible because
> she was a drug user at the time the offenses occurred. Appellant does not further
> explain the relevance of this information to his convictions. Appellant also argues
> that there were inconsistencies with her prior statements and with other witnesses.

> {¶ 88} Upon review, we find that the jury had before it the testimony of the
> victim wherein she states that Appellant assaulted her and cut her with a knife and
> a mirror and tied her up and restrained her for approximately six (6) hours, the
> physical evidence showing the scar on the victim's ear, DNA evidence indicating
> that it was the victim's blood on the mirror and indicating that the blood on the
> knife belonged to a female and that the victim could not be excluded as the
> source. (T. at 420, 428). Further, the victim did admit to lying at the preliminary

hearing with regard to walking to Motomart instead of being driven to her parents' house and then to a friend's house. (T. at 301–302).

{¶ 89} It is axiomatic that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79. Upon our review of the record, we find appellant's convictions for kidnapping, and felonious assault are supported by sufficient evidence. We further find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that Appellant's convictions be reversed and a new trial ordered. Appellant's convictions upon those offenses are not against the manifest weight of the evidence.

{¶ 90} Appellant's Ninth and Tenth Assignments of Error are overruled.

*Palmer*, 2018 WL 1611415, * 9.

In his Petition and Traverse, Palmer repeats arguments he presented to the state appellate court when arguing that his convictions for felonious assault and kidnapping were not supported by sufficient evidence, i.e., that the victim was a drug addict and was not credible or reliable. Doc. 1-6, pp. 3-4; Doc. 6-1, pp. 50-51, 134-135; Doc. 10, pp. 11-13.  He adds an argument not presented in state court, i.e., that there was a lack of physical evidence to support the victim's account of being kidnapped and tied up.  Doc. 1-6, pp. 3-4; Doc. 10, p. 11.  The crux of Palmer's argument is that his convictions for felonious assault and kidnapping are not supported by sufficient evidence because there is a lack of direct evidence and/or because the victim witness was not credible and could not be believed.

With respect to the newly added argument regarding the lack of physical evidence, as indicated the state court was not provided the opportunity to consider that claim and therefore is not properly exhausted.  In any event, "[c]ircumstantial evidence alone is sufficient to support a conviction[.]" *Johnson*, 200 F.3d at 992; *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence").

Palmer's arguments regarding the victim's lack of credibility or reliability amount to a request that this federal habeas court reweigh the evidence or evaluate the credibility of the witnesses.  However, as discussed above, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).

The jury considered the evidence and evaluated the credibility of the victim's testimony regarding her account of the assault and kidnapping, as well as the testimony of other witnesses, including William Spognardi, who testified that, when he asked Palmer why there was law enforcement at Palmer's house, Palmer stated that he had hurt the victim.  *Palmer*, 2018 1611415, ¶¶ 11-12; Doc. 7-3, pp. 120-121.  The jury also heard from Palmer who testified in his own defense.  Doc. 7-4, pp. 86-140; Doc. 7-5, pp. 4-88.

Having considered the evidence presented at trial, the jury found Palmer guilty of felonious assault and kidnapping.  Deference is due the jury's determination.  *Brown*, 567 F.3d at 205.  The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera*, 506 U.S. at 402.  Here, Palmer has not demonstrated that the jury's decision to convict him of felonious assault and kidnapping based on the evidence before it at trial was irrational.

Moreover, as more fully detailed above, applying the proper sufficiency of the evidence standard, the state court of appeals addressed Palmer's sufficiency of the evidence argument and found it to be without merit.  Considering evidence before the jury, including the victim's admission that she had lied during a preliminary hearing, the court of appeals concluded that

Palmer's "convictions for kidnapping, and felonious assault [were] supported by sufficient evidence[.]" *Palmer*, 2018 WL 1611415, ¶¶ 88-89.

As discussed above, on federal habeas review, two layers of deference apply. Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Palmer has not argued or shown that the state court of appeals unreasonably concluded that there was sufficient evidence to support his convictions.  Nor has he shown, as required under AEDPA, that the state court of appeals' sufficiency determination was contrary to or an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Based on the foregoing, the undersigned concludes that federal habeas relief is not warranted based on Palmer's sufficiency of the evidence claim and therefore recommends that the Court **DENY** Palmer's sufficiency of the evidence claim in Ground Eight.

### J.    Grounds Ten through Nineteen

**GROUND TEN:**  Appellant [sic] counsel erred when he failed to raise the issue of trial counsel's failure to raise appellant's rights to a speedy trial violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  Appellants [sic] preliminary hearing was held beyond the statutory time limit.  In addition there was no reason given for continuance reflected in the record.  Also not reflected in the record was to whom the continuance was chargeable.  Appellant claims his liberty was restrained in the interim.  A motion to dismiss was obtainable but counsel for appellant failed to

assert his right.  Appellant was absent during the initial preliminary proceedings held in a holding tank.  Counsel refused to move for dismissal.

Doc. 1-6, p. 4.

**GROUND ELEVEN:**  Appellant counsel erred when he failed to raise the issue of prosecutorial misconduct when the state failed to disclose dates critical to the accused, violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendment [sic] to the United States Constitution.

**Supporting Facts:**  Counsel filed a motion for a Bill of Particulars requesting specific dates in order to prepare a motion for a potential alibi.  The state responded saying it had turned over everything it had.  Appellant claims the state withheld specific dates crucial to his defense depriving him of the ability to file a potential alibi.  Appellant claims the victim's initial sworn statements to investigators was withheld because of the victim's inconsistencies of the date of her allegations.  The state was also aware that appellant had an alibi for that specific date of August 4th, 2016 which was not provided.

Doc. 1-6, pp. 4-5.

**GROUND TWELVE:**  Appellant counsel erred when he failed to raise the issue of trial counsel's failure to present evidence of specific dates to modify his potential alibi violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  In an effort to be brief refer to grounds and supporting facts No. 11.

Doc. 1-6, p. 5.

**GROUND THIRTEEN:**  Appellant counsel erred when he failed to raise the issue of prosecutorial misconduct when the state introduced non-export [sic] testimony and the excessive showing of highly inflammatory and prejudicial photographs violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  Counsel failed to challenge the state's implementation of police officers Non-export [sic] testimony to bolster his plan of guilty by repeatedly showing photographs of stains on a couch as blood evidence never determined to be blood.  Every time an officer would testify the state took an opportunity to show the enlarged photographs to the jury leading the jury to believe that they were blood stains and a crime was committed.

Doc. 1-6, p. 5.

**GROUND FOURTEEN:**  Appellant [sic] counsel erred when he failed to raise the issue of trial counsel's failure to properly cross-examine state's witness William Spognardi violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the Unites States Amendments to the United States [sic.]

**Supporting Facts:**  Prior to cross examination of states [sic] witness William Spognardi defense counsel had established a time-line during the victim's testimony.  During counsel's examination of Spognardi Mr. Spognardi inadvertently made a statement that went un-noticed by all that [S]pognardi, Palmer and the victim were all together at Spognardi'e [sic] lawyers [sic] office breaking the timeline for the kidnapping given by the victim.  Counsel failed to recognize and relate the significance of his statement.  If counsel would have asked Spognardi what time the meeting had occurred at his attorneys [sic] office it would have been impossible for the victim's timeline to have happened when she claimed.  The victim's time being on August 6th, 2016, claiming she was tied up for 6 hours between 2:30 pm. until 8:30 p.m. that evening.  The meeting at Spognardi's attorneys [sic] occurred at 4:30 p.m.  Failure to recognize the significance of such importance was crucial not for the jury to consider.

Doc. 1-6, pp. 5-6.

**GROUND FIFTEEN:**  Appellant counsel erred when he failed to raise the issue of trial counsel's failure to move for an in camera inspection of the totality of witnesses and victim's inconsistent statements violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the United States Constitution.

**Supporting Facts**:  Counsel failed to attack blatant inconsistencies and contradictions of witnesses and prior statements by the alleged victim that would show her incredibility and expose her true motive for her allegations against appellant.

Doc. 1-6, p. 6.

**GROUND SIXTEEN:**  Appellant [sic] counsel erred when he failed to raise the issue of trial counsel's failure to move for a mistrial or acquittal on grounds of perjury and the totality of false testimony violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; the fifth and fourteenth Amendments to the United States Constitution.

**Supporting Facts:**  The state had an obligation and duty once a lie appeared to correct it and to elicit the truth.  State's witness, the victim, when confronted at trial by defense counsel admitted she had lied, committing perjury at the preliminary hearing which ultimately led to appellants [sic] being indicted in the first place.  The lie was relative and material to the case.  The state once aware of the lie failed to act and correct and elicit that truth.  In doing so the jury was

afforded these considerations in there [sic] determining there [sic] verdict.  Being aware of the victim's true nature (credibility) may have changed the course of the trial.

Doc. 1-6, p. 6.

> **GROUND SEVENTEEN:** Appellant [sic] counsel erred when he failed to raise the issue of trial counsel's failure to object to the state's motion in Limine violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; to the United States Constitution.

> **Supporting Facts:**  Counsel failed to object to the state's motion in Limine on the day of trial creating undue surprise, completely destroying appellant's defense.  In addition, defense had no time to prepare a new trial strategy.  Counsel never moved for a continuance to properly prepare a new strategy knowing the motion in Limine would eliminate witnesses and force appellant to take the stand without any corroborating testimony.

Doc. 1-6, p. 7.

> **GROUND EIGHTEEN:**  Appellant [sic] counsel erred when he failed to raise the issue of trial counsel's failure to properly prepare, investigate and obtain Facebook evidence that would exonerate appellant violating his rights to due process and a fair trial.  Ohio Const. ART. I, Section 10 & 16; to the fifth and fourteenth Amendments to the United States Constitution.

> **Supporting Facts:**  Counsel denied appellant his request for evidence from texts sent to contacts by the victim at the time of the alleged allegations.  These contacts and there [sic] texts would not only provide valuable information crucial to the defense but would also show the victim was active online during the time she claimed to be hog-tied for 6 hours.  Fact, you can not be hog-tied and work a keyboard at the same time.  After trying to withdraw counsel for his refusal to produce this evidence appellate [sic] addressed the court concerning this issue particularly.  The court's response was that the Judge had never heard of such a thing being done.  Then, the court ask counsel if he had and counsel replied that he had but to be honest I haven't even tried.  Clearly any information that would exonerate would truly be wort [sic] investigating.

Doc. 1-6, p. 7.

> **GROUND NINETEEN:**  Appellate counsel erred when he failed to raise the issue of trial counsel's failure to object to the prosecutor's misconduct during the State's direct examination of State's witness [D.L.] in violation of his rights to due process and a fair trial pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

> **Supporting Facts:**  During the states [sic] examination of the victim the state had elicited a response that he knew to be a lie and objected immediately to his own

witnesses [sic] response.  But instead of correcting and eliciting the truth as he is obligated and has a lawful duty to do, he relied on the Court's curative instruction to avoid that duty ultimately concealing his devious act, keeping the jury from her telling why she lied.  The Court's curative instruction warned the court not to consider her statement that it wasn't factual.  But the fact the state had an obligation and a duty to reveal why it wasn't factual.  The State under-handedly deprived the Appellant's opportunity to discredit the witness giving the jury the reason the Court determined it not to be factual – that in fact it was a lie, and Appellant has never one time been charged for kidnapping let along beaten 33 counts of kidnapping.  The State had rung a bell and by continuously pursuing a conviction based on a lie, the bell remained unrung and the proceedings tainted by the State's misconduct and failure to uphold its obligation and duty concerning justice, but instead a conviction that was first and foremost at the expense of the Appellant no matter what.

Doc. 1-6, pp. 7-8.

In Grounds Ten through Nineteen, Palmer contends that he is entitled to federal habeas relief because his right to effective assistance of appellate counsel was violated because his appellate counsel failed to raise various instances of ineffective assistance of trial counsel. These claims were presented to the state court of appeals in an App. R. 26(B) application to reopen his direct appeal.  Doc. 6-1, pp. 197-220.

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).   As set forth above, the analysis set forth in *Strickland* applies when assessing claims of ineffective assistance of counsel.  That same standard applies to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided  the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief).  Appellate counsel is not obligated to advance every possible argument on appeal.  *Jones v. Barnes*, 463 U.S. 745, 750-754 (1983).   "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."  *Davila v. Davis*, 137 S.Ct. 2058, 2067 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones*, 463 U.S. at 751-753).  Thus, "[d]eclining to raise a

48

claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Smith v. Robbins*, 528 U.S. at 288).  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones*, 463 U.S. at 751-752)).

On appeal, Palmer's appellate counsel raised thirteen assignments of error, including, *inter alia*, a claim of ineffective assistance of trial counsel relating to the prosecution's use of the victim's prior statement.  *Palmer*, 2018 WL 1611415, * 3.  As noted above, in his App. R. 26(B) application, Palmer argued that his appellate counsel was ineffective for failing to raise an additional ten assignments of error relating to alleged ineffectiveness of his trial counsel.  Doc. 6-1, pp. 197-220.  In its September 17, 2018, judgment entry, the state court of appeals considered Palmer's App. R. 26(B) application to reopen on the merit and found it not well-taken.  Doc. 6-1, pp. 228-232.  Applying the *Strickland*, the state court of appeals concluded:

> Upon review, we find Appellant has failed to demonstrate that his counsel was incompetent or that he suffered prejudiced as a result of his counsel's decisions. We do not find that Appellant has established that the result of the proceeding have [sic] been different.
>
> We find Appellant's arguments unpersuasive and thus find that no genuine issue exists as to whether Appellant was denied the effective assistance of counsel on appeal.

Doc. 6-1, pp. 230-231.

Palmer reiterates arguments considered by the court of appeals.  However, as explained above, where, as in this case, a state court of appeals has reached the merits of the ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins*, 411 Fed. Appx. at 828; *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011) ("In *Harrington,* the Supreme Court explained that a state court need not state its

49

reasoning or provide any explanation for its conclusions for it to 'adjudicate on the merits' a federal claim.").  There is no de novo review of the evidence.  Rather, a habeas court considers "what arguments or theories supported or . . . could have supported, the state court's decision; and then . . . asks whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court.  *Harrington*, 562 U.S. at 102.   "Habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Id.* at 102-103 (internal quotations and citations omitted).

Palmer does not explain how the arguments he claims appellate counsel should have raised were stronger than those presented in his direct appeal.  He does not respond in a meaningful way to Respondent's litany of arguments as to how appellate counsel's performance was not deficient under the deferential *Strickland* standard.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." ) (internal citations omitted).  Nor does he argue or explain how the state court of appeals' denial of his App. R. 26(B) application was contrary to or an unreasonable application of clearly established federal law, or how the state court's adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court, showings that are required in order to be entitled to federal habeas relief.

Having reviewed the record in this matter and considering the foregoing, the undersigned finds that Palmer has failed to satisfy his burden of showing that the state court's decision regarding his claims of ineffective assistance of appellate counsel "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*¸ 562 U.S. at 103.

Accordingly, the undersigned recommends that the Court **DENY** Grounds Ten through Nineteen on the merits.

### IV. Recommendation

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS and/or DENY** Palmer's Petition (Doc. 1).


Dated: April 21, 2021

                                        */s/ Kathleen B. Burke*
                                        Kathleen B. Burke
                                        United States Magistrate Judge




### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).